103 So.2d 192 (1958)
In re ESTATE OF Max LIEBER, Deceased.
Supreme Court of Florida.
April 9, 1958.
Rehearing Denied June 24, 1958.
*194 Melvyn B. Frumkes and Jack A. Abbott, Miami Beach, for appellant.
Englander & Hoffman, Miami Beach, for appellee.
O'CONNELL, Justice.
This appeal involves two orders of the County Judge's Court of Dade County establishing fees for co-executors and their attorneys in a probate proceeding. The appellant, Gerald Lieber Goodman, who is decedent's grandson and principal beneficiary of his estate, contends that the fees allowed both the executors and their attorneys are excessive.
In his will decedent named three co-executors: The First National Bank of Miami; Meyer Lieber, decedent's nephew; and Lawrence E. Hoffman, who had been decedent's attorney. The executors retained the law firm of Englander and Hoffman to perform the legal services necessary to the probate of the decedent's will. Lawrence E. Hoffman, one of the co-executors, is one of the partners in said law firm. The co-executors and attorneys are the appellees.
During the probate proceedings, which lasted approximately four years, and prior to the entry of the orders here complained of, the County Judge had awarded fees to the executors in the amount of $12,500 and fees to Englander and Hoffman in the same amount, $12,500. The allowance of these sums is not contested.
However, thereafter on petition of the co-executors, at the time of submission and approval of the final accounting as made by them, the County Judge by order dated October 31, 1955 granted to the co-executors *195 the sum of $7,500 for "final statutory and additional fees and compensation" and on the same day entered an order granting to the firm of attorneys the sum of $12,500 as "final compensation for all services rendered as attorneys". The result of these two orders was to pay the co-executors a total of $20,000 in fees and the attorneys a total of $25,000 in fees. On appeal to the Circuit Court these orders were affirmed.
The first point which we must dispose of is a dispute between the parties hereto as to the value of the estate since reasonableness of the fees is in some measure dependent thereon.
The appellant contends that the value of the estate was $244,153.58, the amount established in the report of appraisers filed with the court. The co-executors say it was $364,153.58, which is approximately the same figure shown in the Federal Estate Tax Return filed on behalf of the estate. The difference between the two figures is exactly $120,000.
We find that this difference of $120,000 results from the appellees mistakenly considering, as part of the assets of the estate, property which was transferred by decedent to an inter vivos trust, of which the First National Bank of Miami was Trustee.
The property transferred to the inter vivos trust consisted of cash and bonds, in amount of $75,000, and a piece of real property, valued at $45,000. In a suit for declaratory decree, filed by the decedent's widow against the co-executors and the trustee of the inter vivos trust, the widow was found to have a dower interest in the abovementioned cash and bonds, and the piece of real property was declared to be homestead property.
The inter vivos trust and the transfer of property thereto was not declared invalid or set aside except as to the widow. Therefore neither the cash and bonds nor the real estate conveyed thereto ever became a part of the decedent's estate.
On other grounds the homestead property could not be considered property in the hands of the executors. Sec. 733.01, F.S.A., which provides that the personal representative shall take possession of the decedent's personal property wherever situated, and of the real estate within the state, specifically excludes homestead property. See also Sec. 731.27, 731.34, F.S.A.; Spitzer v. Branning, 1938, 135 Fla. 49, 184 So. 770, and the same case again in 139 Fla. 259, 190 So. 516.
We therefore find that the value of the estate insofar as this cause is concerned was that set by the appraisers, to-wit: $244,153.58.
In considering the reasonableness of the fees awarded we will first treat those awarded the co-executors.
Sec. 734.01(1), F.S.A., provides that for ordinary services rendered by a personal representative of the estate of a decedent, commissions shall be allowed upon the amount of the estate, both real and personal as follows:
"(a) For the first one thousand dollars at the rate of six per cent; all above that sum and not exceeding five thousand dollars at the rate of four per cent; and all above five thousand dollars at the rate of two per cent."
This section of the statutes further provides that a personal representative shall be allowed such further compensation as the court may deem just and reasonable for any extraordinary services, including the sale of real estate or personal property, conduct of litigation, adjustment and payment of extensive or complicated estate or inheritance taxes, the carrying on of decedent's business by order of court, and for any other special services necessary to be performed on behalf of the estate.
This section further provides that irrespective of the number of the personal representatives or the value of the estate "* * * only reasonable compensation for *196 the entire services of the personal representative or representatives * * *" may be allowed.
The statutory fee for ordinary services of the personal representatives in the case now before us, based on the figure of $244,153.58, abovementioned, is as follows:

 $1,000.00 at 6% = 60.00
 $4,000.00 at 4% = 160.00
 $239,153.58 at 2% = 4,783.07
 _________
 Total $5,003.07

Since the three co-executors were awarded a total of $20,000 in fees, it follows that $14,996.93 must be considered as having been awarded as compensation for extraordinary services.
In the three orders by which he awarded commissions to the co-executors in the sums of $5,000; $7,500; and $7,500, respectively, the County Judge did not make any finding or recitals as to the nature or extent of the extraordinary services rendered by them to the estate. Nor did he designate what sums were paid for ordinary services and what sums were paid for extraordinary services.
In its main brief appellant states that no expert testimony was taken or heard by the court in proof of the reasonable value of the services rendered either by the attorneys or the co-executors, and that the petitions and schedules filed by the attorneys as to the attorneys' services and the probate record constitute the sole basis for the award of fees. Appellant calls our attention to the fact that the co-executors filed no written statement or schedule of special or extraordinary services rendered by them.
The appellees, in their reply brief, do not dispute the above statements of appellant. Nor do they contend that testimony or other evidence as to services rendered, or the reasonable value thereof, was in fact offered and heard by the court but not made a part of the record on appeal. They do not contend that the record on appeal does not contain all the evidence and testimony offered before the court on the matters in controversy. In their reply brief appellees do state that the co-executors presented testimony to the County Judge when temporary allowances were ordered on November 13, 1952 and November 25, 1953.
The orders under attack here do not recite that the court heard testimony regarding the matters contained therein.
On appeal it is the burden of the appellant to show error, or abuse of discretion, and he must make it appear from the record.
In this case, insofar as the co-executors' fees are concerned, the record reflects only the probate file including the petitions for fees. There is no other showing of the extent or reasonable value of the extraordinary services rendered by the co-executors.
The probate file itself should be and always is, of necessity, one of the means of determining the extent of services rendered by a personal representative to an estate. Yet the file itself seldom reflects all the work done or the value thereof.
Further, while the judgment and experience of the county judge must always be utilized in determining the reasonable value of such services, proof of the reasonable value of such services, given by competent persons, should be offered to and considered by the court in arriving at the amount of fees awarded.
By using a percentage of the value of the estate as the method of determining compensation to be paid a personal representative for ordinary services, it is evident that the legislature recognized that the ordinary services to be performed and the attendant responsibility, in some measure at least, are relative to the value of the estate. This being true it must be expected that more ordinary or usual services will be required in a large estate than *197 in a smaller one. If this were not the case there would be no justification for basing the compensation on a percentage of the value of the estate.
It follows therefore that a determination of what are extraordinary services must of necessity be made in light of the value or size of the estate, for services which would be extraordinary in a $5,000 estate might not be in a $50,000 estate.
Therefore, while the legislature recognized and provided for compensation for extraordinary services, it seems clear, in view of the method which it provided for determining compensation for ordinary services, that it was intended that there be determined in each case, first, what extraordinary services were rendered and secondly, the value of such services to the estate which must bear the cost thereof.
A personal representative who has satisfactorily administered an estate is entitled to the statutory commission or fee without further proof. But it is otherwise when he seeks compensation for extraordinary services.
The compensation provided for by statute is presumed to be adequate, just and reasonable compensation for the services of a personal representative rendered in an estate of a decedent. Where this compensation is not adequate, just or reasonable, the personal representative, as the claimant of such compensation against the estate, has the burden of showing that the services for which he seeks payment are in fact not usual to the administration of an estate of the value involved, i.e. that they are extraordinary, and he must also show, by competent evidence, the reasonable value of such services in light, among other things, of the value of the estate and the compensation paid him for ordinary services.
Further, in determining the extent of extraordinary services and the reasonable value thereof, the court must also consider what other fees, commissions or compensation have been paid by the estate for services which are related to the administration of the estate, exclusive of legal services.
In the case now before us certain of the real estate of the decedent was sold by the co-executors and real estate commissions totaling $13,000 were paid to real estate brokers; accountants' fees of $1,000 were paid for handling estate tax matters and one of the co-executors was paid, by court order, the sum of $1,844.07 for his services in managing the improved real property of the estate. All of these fees and commissions should be considered by the court in determining the extent and value to the estate of the services of the co-executors, particularly as regards payment to the co-executors for extraordinary services in those matters for which the above mentioned fees were paid. For example the co-executors should not be compensated in as large an amount for the sale of the real estate in this case as they would be had they made the sale without the assistance of and payment of commissions to real estate brokers. This does not mean, however, that nothing should be paid the co-executors for services in such sales, only that the estate should not be required to pay two fees for the same services.
The determination of such compensation is a matter within the discretion of the County Judge and the figure which he has arrived at may well be justified. But on the record before us we must conclude that except as reflected by the probate file the co-executors have not shown either the nature, extent or value of the services for which they claim extraordinary compensation. On the basis of the record before us the fees awarded the co-executors seem excessive, particularly when considered together with the fees mentioned in the preceding paragraph.
*198 Consequently, we must conclude that the order of October 31, 1955 awarding additional commissions to the co-executors in amount of $7,500 must be reversed.
The County Judge, in three separate orders, awarded the attorneys for the co-executors sums of $5,000; $7,500 and $12,500, respectively. Only the last order is attacked.
With each of three petitions for award of attorneys' fees, the attorneys attached schedules of services rendered to the estate. However, no testimony was introduced either to show the value of such services to the estate or the customary charge for such services in the community.
In Esch v. Forster, 1936, 123 Fla. 905, 168 So. 229, 232 we said:
"A large discretion is vested in the chancellor in allowing attorney's fees, and his findings will not ordinarily be disturbed where the amount allowed is not unreasonable. Of course, the chancellor should take care that only reasonable fees be allowed upon a consideration of testimony on the subject by competent and disinterested attorneys; but there should be reserved to him in all cases the right and duty to determine the reasonableness of the award, in the light of all pertinent circumstances that should legally and equitably affect the amount allowed." (Emphasis supplied.)
In Hryckowian v. Hryckowian, Fla. 1955, 82 So.2d 879, a divorce suit, the dispute on appeal involved the award of alimony and of attorney's fees for plaintiff's counsel. Again, this Court said the question of attorney's fees was a delicate one with which to deal. The Court, on page 880, said:
"* * * At any rate, every record in a case like this should contain evidence and recitals which support the fee awarded so that when challenged there will be basis on which this court can intelligently weigh the judgment of the trial court."
See also Lucom v. Atlantic Nat. Bank of West Palm Beach, Fla. 1957, 97 So.2d 478.
In the recent case of Lewis v. Gramil Corp., Fla., 94 So.2d 174, 177, which involved allowance of fees for a receiver and his attorneys, we discussed the review of an exercise of discretion by a chancellor in allowing such fees.
Among other things we said there that the court should "see to it that there is offered * * * sufficient proof to show the nature and extent of the services rendered" and "the opinions of persons of experience as to the value of the services rendered."
We commented, also, that in determining such fees the court must draw upon his own experience and knowledge in such matters and upon the record in the cause, but that he should not rely solely thereon. It appears that in the case before us the County Judge relied upon the probate file, the petitions and schedules of services filed by the attorneys, and upon his own knowledge and experience. There is no evidence in the record of the reasonable value of such services to the estate or evidence of the customary charges for such services in the community.
While the inadequacy of the record above mentioned would in itself warrant reversal, there are also matters reflected by the record which indicate that the award of $25,000 attorneys' fees may well be excessive for the legal services rendered. A discussion of these matters requires a brief summary of the assets of the estate, the transactions surrounding the disposition thereof, and of the litigation involving the estate.
Assets of the estate coming into the hands of the executors were neither involved nor difficult to marshal. They were: two vacant lots at one location valued at $11,500; three vacant lots at another location, valued at $110,000; an *199 apartment building, valued at $62,500, which was managed for some months by one of the executors; a building consisting of two stores, valued at $40,750; furniture in the homestead; an automobile; cash in banks; jewelry, coins, personal effects and clothing.
Probate proceedings lasted for four years. During that time the executors and attorneys sold the realty, paying out a total of some $13,000 as fees to real estate brokers. The automobile was sold and the other assets properly accounted for. Various income and estate tax returns were prepared and a firm of accountants paid $1,000 for their assistance therein.
A suit was filed against the estate in the amount of $700 and was settled out of court for $300. Another suit, in which the plaintiff therein asserted a $10,000 claim against the estate, was dismissed in the lower court on the pleadings, but was appealed to this Court, where it was again dismissed. The estate brought suit to evict a tenant from some of the vacant lots which suit was contested, but resulted in a judgment favorable to the estate.
Another suit was brought by decedent's widow against the trustee of the inter vivos trust and the executors of the estate. This suit was for a declaratory decree. The record does not reveal the details of this suit, but appellant argues in his brief, which is not disputed by appellees, that the suit was divided into several parts and was disposed of as follows:
(1) The widow claimed dower in the assets of the inter vivos trust. On motion of the widow, supported by briefs, a decree was entered in her favor on that point.
(2) The widow claimed the residence of the decedent as homestead and that the deed by the decedent to the trustee was not signed by her. On motion for summary decree the court declared the property was homestead.
(3) The widow sought to set aside four charitable bequests made in the will, which was executed about a month prior to her husband's death. The bequests were invalidated on motion for summary decree.
(4) The widow was concerned with a provision in the will that not less than $15,000 be spent on a tombstone. By stipulation the parties agreed to disregard that provision.
(5) The widow sought an interpretation of her liability to share payment of estate taxes. This question was disposed of by stipulation.
(6) The widow questioned the validity of the ante-nuptial agreement she had executed, particularly as to whether it deprived her of dower in a particular parcel of realty. On motion, supported by briefs, the court held the agreement effective to preclude her taking dower in such realty.
Aside from the contention that the legal services involved in all the matters above mentioned do not warrant a legal fee of $25,000, appellant further contends that the fees for the last mentioned suit, the suit for declaratory decree brought by the widow, have been paid by the estate whereas they should have been paid from the inter vivos trust.
From the briefs before us it is obvious that the estate was necessarily concerned with several of the points involved in the widow's suit for declaratory decree. Appellees contend that the inter vivos trust was part of the ante-nuptial agreement between the widow and the decedent affecting a large portion of the assets of the estate, so that all executors had to be joined as party defendants for that point alone.
We are unable to determine from the record before us whether the estate did or should bear the entire cost, including attorneys' fees, of that litigation. However, it is our observation that the inter vivos trust and the estate should each bear only *200 that portion of such cost which is proportionate to the benefit and/or liability which each received or had therein.
We turn our attention next to matters reflected in the petitions for attorneys' fees and the schedules of services attached thereto.
In reading these documents and more particularly the schedules of services we observe that there are a large number of entries listing non-legal services stated to have been performed by the attorneys. These services appear to be within the scope of the duties of and usually performed by the personal representative for which he is paid by the estate.
For example there are numerous entries in which the attorneys recite that they did work in marshalling and establishing the assets of the estate and protecting same, and that they performed work in interesting purchasers in the sale of the real estate, and in the sale of the automobile. Yet not only does much of this work appear to be that which the personal representatives should have done, but in petitions filed by them they claim credit for it. The attorneys indicate that they did considerable work in connection with the various tax returns, yet the statute seems to make this one of the co-executors' duties since it authorizes extraordinary compensation for handling of extensive or complicated estate or inheritance tax matters. Further, the co-executors engaged a firm of accountants to handle these matters and paid them $1,000 for their services.
No effort has been made to cite all of the instances in which the attorneys indicate that they have performed executorial services, and no attempt to do so will be done herein. The County Judge, in the further proceedings to be had before him, must carefully consider the nature of the services rendered by the attorneys and allow payment only for the necessary legal services rendered. The attorneys must look to the executors for payment for the executorial services which they performed for the executors.
There is nothing improper in a personal representative engaging attorneys or others to perform the services which he should perform, but it is improper for the court to pay fees to attorneys for the personal representatives for purely executorial services, the reason being that a duplicate cost to the estate usually results, in that the personal representative gets paid for the work as an executorial service and the attorney is compensated for the same work as a legal service.
As was said in In re Claus' Estate, Mo. App., 1943, 167 S.W.2d 372, 374:
"* * * It was never within the contemplation of the statute that the administrator would employ an attorney and delegate to him all of the clerical work and such services as could be performed by himself as well as by an attorney, and charge the estate therefor as `legal advice and service'."
When the personal representative chooses to have the work which he should do done by another, he, not the estate, should bear the cost thereof so that the estate is not burdened with a double charge therefor. See In re Johnson's Estate, 1942, 68 S.D. 598, 5 N.W.2d 38, and In re Edelmuth's Estate, Sur. 1943, 62 N.Y.S.2d 703.
Attorneys who are called upon by personal representatives to perform non-legal services for the estate, should, in order to protect their right to compensation, make clear to the personal representative that he must pay the attorney for such work out of the compensation allowed the personal representative and that it cannot be charged against the estate as legal services.
We realize that few attorneys will do this for fear of offending the personal representative who engaged them, but that is a matter for those so situated to solve between themselves.
*201 As above noted, one of the co-executors was one of the members of the firm of attorneys which was retained to represent the co-executors and the estate. There is nothing wrong with this. The statute recognizes that such a circumstance may occur for Sec. 734.01(4), F.S.A. provides that if a personal representative is a practicing attorney, and does render legal services in connection with his duties, he shall be allowed reasonable fees for the legal services which he renders. We construe this to mean that he shall receive compensation for the legal services he renders in addition to the compensation paid him for executorial services.
The fact that one of the members of the law firm was also a co-executor may well account for the numerous entries of executorial services on the schedule of services kept and rendered by the firm. The non-legal services which the firm member rendered cannot be charged as legal services against the estate, but could, of course, be considered by the court in establishing the co-executors' commissions for extraordinary services.
In the comments above made we do not intend in any way to indicate that the co-executors, the attorneys or the court have attempted to wrongfully charge the estate with fees and commissions. Rather, we say again, as we have said above, that from the record we are unable to say that the compensation awarded was just and reasonable.
The ascertainment of just and reasonable attorneys' fees in estate proceedings is somewhat more difficult than the determination of fees for a personal representative for the reason that there is no statutory guide therefor, and for the further reason that many elements go into the setting of such a fee.
Most local bar associations have, in their minimum fee schedules, established a guide for determining a reasonable fee for usual or ordinary legal services in probate proceedings. In other communities it is customary that for ordinary legal services the attorney be paid according to the statutory schedule governing compensation to personal representatives for ordinary services.
It seems logical that in allowing an award of attorneys' fees the court could well award a sum for ordinary legal services, which sum should be calculated on the value of the estate involved, and, where proper, award an additional sum for necessary extraordinary legal services based essentially on the value of the specific extraordinary legal services rendered. This method would surely relieve the attorneys and the court from the burdensome problem of keeping, proving and determining the value of each of the many items of legal work which are reasonably and usually required to be performed in an estate, leaving the attorneys the much simpler problem of proving and the court the much easier problem of determining whether any services were actually extraordinary in such a case and if so the reasonable value thereof to the estate, and the customary charge for such services in the community. We do not say that the County Judge must follow the above procedure, but rather only that such a procedure would be acceptable and proper.
On remand of this cause the co-executors should offer to the court, and one of the parties should make a part of the record, testimony and evidence showing:
(1) the nature and extent of all the services rendered by them which they contend to be extraordinary services, and
(2) that such services were necessary and beneficial to the estate, and
(3) the reasonable value of such extraordinary services to the estate in light of the facts of this case, giving consideration to, among other things, the value of the estate and the nature of the assets; the commissions and fees paid to (a) the co-executor Meyer Lieber for managerial services (b) real estate brokers and (c) *202 accountants; the active participation by the co-executors, if any, in the litigation in which the estate was involved and the liability or the benefit to the estate in said litigation.
In any order subsequently entered by the County Judge on the matter of compensation for extraordinary services of the co-executors it is suggested that he set forth therein the amount which the co-executors were entitled to receive for ordinary services, the services which were rendered which he considers to be extraordinary services, and the compensation allowable for such extraordinary services, setting forth, if not burdensome, the amount of compensation allowed for each class or item of extraordinary service. The order of the County Judge in In re Bolen's Estate, 1955, 8 Fla. Supp. 66, is recommended as an excellent guide for such an order.
On remand of this cause the attorneys for the co-executors should offer to the court and one of the parties should make a part of the record testimony and evidence showing:
(1) the nature and extent of all the legal services rendered by them exclusive of executorial services which they have rendered, and
(2) that such services were necessary and beneficial to the estate, and
(3) the reasonable value of such services to the estate, including testimony of qualified members of the Florida Bar thereon, and
(4) the extent to which the services of the attorneys in the suit for declaratory decree brought by the widow was rendered on behalf of the co-executors, as distinguished from the trustee of the inter vivos trust, and the extent to which said services benefited the estate of decedent.
If the County Judge so desires he could well consider dividing the legal services into ordinary and extraordinary services and allowing and dividing the allowance of compensation accordingly.
In entering any further order on the allowance of attorneys' fees to the attorneys herein it is suggested that the County Judge in his findinges or recitals therein indicate the basis for his award, if any, as did the judge in In re Bolen's Estate, supra.
For the reasons above stated this cause is reversed and remanded with directions that the Circuit Court quash its order of affirmance and remand the cause to the County Judge for further proceedings consistent herewith, including the taking of further testimony.
TERRELL, C.J., and THOMAS, HOBSON and THORNAL, JJ., concur.