### In re DALTON'S WILL.
No. 58569-B.

County Judges' Court, Dade County.
July 13, 1964.

Lane, French, Primm, Lane & Carrier, and John J. Hunt, all of Miami, for the co-executors.

Blackwell, Walker & Gray, Miami, special trial counsel for the co-executors, Messrs. Lillagore and Lane, individually, and the Dunspaugh-Dalton Foundation.

Ray M. Earnest, Miami, for the Dunspaugh-Dalton Foundation.

Shutts, Bowen, Simmons, Prevatt & Boureau, Miami, for the contestant.

FRANK B. DOWLING, County Judge.

*Order fixing and awarding compensation of counsel, co-executors, and expert witnesses:* Ann V. Dalton, a widow, died at Miami Beach, Dade County, Florida on the 12th day of January, 1963. At the time of her death, she was domiciled in the Dupont Plaza Hotel, Miami, and was 83 years of age. Mrs. Dalton was without issue and left surviving her among her closest and known next of kin, Joseph R. Lillagore, of Dade County, Florida, a nephew, and Frances L. Cummings, of Pelham Manor, New York, a niece. At the time of her death she was possessed of a substantial estate valued at the inception of the matters in this order referred to at about $12,500,000.

Mrs. Dalton died testate leaving a last will and testament dated April 12, 1960, and a codicil dated November 18, 1960. By her last will and testament she made various bequests to relatives and charities, ranging from $5,000 to $25,000. The principal objects of her will, however, were her nephew, Joseph R. Lillagore, who was bequeathed $1,000,000; and her niece, Frances L. Cummings, who was designated the sole residual beneficiary of her estate. Joseph R. Lillagore and Mrs. Dalton's friend and long time attorney, William A. Lane, were appointed co-executors of her estate without bond. About six months after the execution of the will aforesaid, Mrs. Dalton executed a codicil to her last will and testament. This codicil is dated November 18, 1960 and was executed in New York City, New York. While there was provision in the codicil for certain additional small bequests and the changing of some others as contained in the last will, the principal objective of the codicil was to revoke the residual clause of the last will and testament wherein Frances L. Cummings was the sole residual beneficiary, and substitute for her as residual beneficiary such corporation or corporations as William A. Lane, Monsignor William Barry, and Eugene T. Erb should appoint by instrument in writing, in such shares or proportions as may be apportioned by a majority of them, provided that such corporations be organized and operated exclusively for such religious, charitable, scientific, literary or educational purposes so that the residual bequest would qualify for charitable purposes and the tax exemptions incident thereto. Mrs. Dalton stated in her codicil that she did not make any bequest to her niece, Frances L. Cummings, for the reason that during her lifetime she had made ample provision for her.

It is admitted that between November 16, 1955 and November 18, 1957 Mrs. Dalton gave to her niece, Frances L. Cummings, gifts of stock having a present market value in excess of $7,500,000. It is likewise admitted that about the month of October, 1961, Mrs. Dalton made a gift of shares of stock to her nephew, Joseph R. Lillagore, of about $1,000,000, and at the same time made a like gift to her friend and attorney, William A. Lane, of shares of stock of the value of about $1,000,000, and that Mrs. Dalton paid to the federal government the substantial gift taxes incident to the said gifts.

Upon the death of Mrs. Dalton, her last will and testament and codicil were offered for probate by the named executors, Joseph R. Lillagore and William A. Lane. The same were admitted to probate by order of this court and the co-executors qualified as such and undertook the performance of their duties. The co-executor, William A. Lane, was represented as such by

his law firm designated as Lane, French, Primm, Lane & Carrier, attorneys at law in Miami. The co-executor, Joseph R. Lillagore, was represented by John J. Hunt, attorney at law in Miami. The said firm and attorney have acted as co-counsel for the co-executors throughout these proceedings.

Shortly after the admission of the testamentary writings aforesaid to probate the co-executor, Joseph R. Lillagore, advised his sister, the niece Frances L. Cummings, of the contents of the will and codicil. Her dissatisfaction with the contents thereof became immediately evident and was made known to the co-executors. From the admission of the will and codicil on February 18, 1963 to August 5, 1963, it was anticipated that a contest would probably ensue over the validity of the codicil to the last will and testament. This anticipation was realized on the 5th day of August, 1963 when the co-executors, as such and individually, were informed by the law firm of Shutts, Bowen, Simmons, Prevatt & Boureau in the form of a letter that they were counsel for Frances L. Cummings, and in said letter advised the co-executors as such and individually that unless certain demands therein made were met, it was her purpose to seek the revocation of the codicil to the last will and testament, and also to seek restitution to the estate of Mrs. Dalton of the gifts of $1,000,000 each which had been received individually by Mr. Lillagore and Mr. Lane prior to the death of Mrs. Dalton and the costs incident to such gifts. The letter of August 5, 1963 is a part of the record in this cause and no useful purpose would be had in further describing the contents thereof herein.

The record shows that upon receipt of the letter of August 5, 1963 aforesaid, conferences were immediately held by the co-executors and their counsel, and it was determined and agreed that no settlement would be entertained. The decision was reached at that conference and subsequent ones to employ special trial counsel to meet the challenge contained in the letter of August 5, 1963, and to seek the approval of the court for the hiring of such special trial counsel. The court finds there were two reasons for this decision. The first reason was that Mr. Lillagore and Mr. Lane were individually involved in the charges and accusations in the letter of August 5, 1963 and their personal estates and fortunes were placed under attack by the implications and charges therein made. The other consideration was the fact that the estate was confronted with a proposed contest over the validity of the codicil brought by a contestant having substantial financial resources of her own with which to finance such a contest. She was represented by counsel of outstanding reputation and ability in the community, and from

the information and detailed contents of the letter of August 5, 1963, it was apparent to the co-executors and their attorneys that Mrs. Cummings had been engaged for some time past in preparing for the proposed assault upon the codicil aforesaid, thereby making time of the essence in the preparation of a defense thereto and thus requiring the services of a law firm having the personnel and facilities capable of meeting such a challenge. After consideration, it was agreed to seek the services of Blackwell, Walker & Gray as such special trial counsel. Blackwell, Walker & Gray is a law firm comprised of some forty-two associate attorneys having a correspondingly established personnel qualified in every respect to undertake the performance of the task that would be imposed upon special trial counsel in the defense of the anticipated contest. Conferences were had by members of the named firms which culminated in an agreement between them whereby Blackwell, Walker & Gray were to be hired as special trial counsel provided the approval and consent of the probate court was first had and obtained, and it was agreed that for their services as special trial counsel in assisting the attorneys for the co-executors in the defense of the anticipated contest and for assuming the responsibility and taking full charge thereof, Blackwell, Walker & Gray would receive such compensation as might be allowed by the county judge upon application therefor; that the agreement between the law firms was reduced to writing in letter form, joined in by all parties, including the charitable foundation that had been designated by William A. Lane, Monsignor William Barry, and Eugene T. Erb as the sole beneficiary of the residual estate. This letter has been admitted in evidence and is a part of the record in this cause. On proper application thereafter made, an order was entered by this court on the 26th day of September, 1963 authorizing the co-executors to employ Blackwell, Walker & Gray as special counsel for the co-executors.

On September 19, 1963, Frances L. Cummings, through her counsel aforesaid, formally began the anticipated contest. On that day she filed a petition to revoke the codicil on the ground of testamentary incapacity and because of the alleged undue influence of William A. Lane. On the same day, she filed a petition for the appointment of an administrator ad litem in Mrs. Dalton's estate, wherein she sought to have instituted proceedings against Joseph R. Lillagore and William A. Lane, individually, to recoup for the Dalton Estate the two gifts of $1,000,000 each previously referred to, together with the costs incident thereto, alleging in said petition that the testatrix was incompetent and under undue influence exercised by Lillagore and Lane, in the making of said gifts, among other things.

The record reflects that during all of this time the firm of Lane, French, Primm, Lane & Carrier, and particularly William A. Lane and William A. Lane, Jr. of that firm, had devoted almost all of their time and efforts in preparing for the defense of the contest; that the firm of Blackwell, Walker & Gray, from the time of the initial conference with William A. Lane, Sr., had assigned the necessary qualified members of the firm and their associates towards a study and preparation as special trial counsel in the case; that for the ensuing ten months a tremendous volume of work was undertaken and accomplished by the firm of Blackwell, Walker & Gray in the performance of their duties. This work is outlined and briefed in the statement of Blackwell, Walker & Gray admitted in evidence in this cause as petitioner's exhibit no. 2 and is made a part of this record. In the hearings that have been held before this court on the question of compensation, many of the outstanding, recognized, well-qualified, and highly esteemed members of the Bar have testified. All of these gentlemen have commented in the most complimentary manner and with the highest of praise upon the outstanding and exemplary performance of legal duty rendered by the firm of Blackwell, Walker & Gray in their preparation of this case. Without exception, these attorneys, who will be hereinafter mentioned, have stated that in all of their experience they have never seen a more well-prepared and brilliantly conceived defense and preparation for trial as has been exhibited in this case. The court will make no effort to itemize or delineate in particular the vast scope of services rendered either by the firm of Blackwell, Walker & Gray or the work and services performed by the legal counsel for the co-executors, Lane, French, Primm, Lane & Carrier, and John J. Hunt. Seven-hundred and fifty pages of testimony have been taken before this court and reported in this cause, reciting in detail the nature and extent of these services and the record may be referred to.

The cause was set for trial before the county judges' court, Dade County, for March 9, 1964, and three consecutive weeks were initially allocated for the presentation of evidence. On the eve of the trial, and without prior warning or the slightest intimation thereof, Frances L. Cummings suddenly announced in open court through her counsel of record that she wished to withdraw her petitions and contest aforesaid with prejudice to her rights and at her cost. The same having been submitted in writing at the direction of the court, an order was entered dismissing the petitions with prejudice and at the cost of the contestant, Frances L. Cummings.

There have now been filed before the court petitions for compensation by Blackwell, Walker & Gray as special trial counsel;

by Lane, French, Primm, Lane & Carrier, and John J. Hunt, for extraordinary services as counsel for the co-executors in connection with the contest aforesaid; and by Joseph R. Lillagore and William A. Lane, as co-executors, for extraordinary services as co-executors in connection with the contest aforesaid. The petition of Blackwell, Walker & Gray, as special trial counsel, exhibits the statement of their services above referred to as petitioner's exhibit no. 2 filed in the cause, and the petition for compensation of special trial counsel, Blackwell, Walker & Gray, is joined in by the co-executors and their counsel, and the officers of the Dunspaugh-Dalton Foundation, the sole charitable residual beneficiary created to receive the residual estate of Mrs. Dalton by William A. Lane, Monsignor William Barry, and Eugene T. Erb, as in the codicil provided. It may be significant to state here that Mr. Erb has died subsequent to the death of Mrs. Dalton and that Dexter French of the law firm of Lane, French, Primm, Lane & Carrier, partner of William A. Lane, has been named as his successor, so that the law firm seeking compensation and agreeing to compensation now constitutes two-thirds of the directorate of the charitable foundation known as the Dunspaugh-Dalton Foundation, the third member being Monsignor William Barry.

The firm of Blackwell, Walker & Gray, as special trial counsel, suggested that in their opinion a fair and reasonable fee for services rendered by them was $650,000. This fee was agreed to and consented to by all of the parties aforesaid, and all of whom, including Monsignor William Barry, were before the court in person upon the presentation of the statement and petition. The court was of the opinion that it could not treat such a petition as an ex-parte matter; that the ultimate beneficiary of the charitable gifts of Mrs. Dalton had not actually been ascertained or identified; that these charities and individuals or associations who would ultimately benefit from the proceeds of the gifts should be represented before the court by competent, qualified and disinterested attorneys to assist the court in arriving at fair and reasonable compensation for all claimants therefor for all work reasonably and necessarily done in connection with the defense of the contest. To this end, Ray M. Earnest, of the Dade County Bar, was retained as independent counsel for the Dunspaugh-Dalton Foundation, Inc., and Mr. Earnest was charged by the court that he had the legal duty of a fair presentation of the entire matter in behalf of the foundation on a strictly adversary basis; Mr. Earnest was further charged by the court that if upon his investigation and the investigation of responsible counsel as expert witnesses chosen to assist him in that behalf, it was determined in their opinion that the requested fees were fair and reasonable, as it had been indicated and agreed to by all those present as above noted, then all Mr. Earnest and his associates

had to do was to advise the court that they so found. There being no objection to that procedure by any of the interested parties, the court proceeded to hear testimony as to fair, reasonable and proper compensation for all parties having rendered service necessary and proper in the defense of the contest.

In addition to the compensation sought by special trial counsel, Blackwell, Walker & Gray, of $650,000, the firm of Lane, French, Primm, Lane & Carrier, and John J. Hunt, sought compensation for extraordinary legal services in the sum of $500,000 as is evidenced by their petition to that effect. The co-executors, Joseph R. Lillagore and William A. Lane, seek extraordinary compensation as co-executors for services rendered in the defense of the contest in the sum of $250,000.

The co-executors, their counsel, special trial counsel, and counsel for the Dunspaugh-Dalton Foundation, have all sought the advice, help, and testimony of highly esteemed and well-qualified attorneys of this county to testify as expert witnesses in their behalf in assisting the court in arriving at fair compensation. Some of these outstanding members of the Bar have actually attended and listened to all, or practically all, of the testimony that has been offered in ten consecutive hearings before the court. All of them have spent many hours in preparation for their testimony before the court. They have reviewed the files of the Dalton Estate in the county judges' court. All have conferred at length with all of the attorneys and the co-executors seeking compensation. They have studied the voluminous report of special trial counsel reciting the work done and the results accomplished by them. They have reviewed the petitions of all of those seeking compensation and have listened to all or much of the testimony before the court. Their testimony reflects mature deliberation on their part in arriving at their opinion of fair compensation based upon the evidence and the guidelines of appellate opinion and canons of ethics.

Petition has been filed for reasonable compensation for the attorneys who have appeared as expert witnesses in this cause. It is only natural that outstanding attorneys of recognized ability who have been leaders in their profession should be the ones chosen to appear as expert witnesses when such testimony is demanded for the fixing of fair and reasonable attorneys fees. It has long been a matter of concern to the court that the very lawyers whose time is probably the most valuable of any members of the Bar have been imposed upon by their brothers of the Bar to study files, attend conferences, review records, and attend court hearings to testify as expert witnesses on the question of attorneys fees upon a gratuitous basis solely because they were lawyers. Their testimony is indispensable in such a proceeding,

for the Supreme Court of Florida, in the case of In re Lieber's Estate, 103 So. 2d, 192, said —

" * * * In determining such fees the court must draw upon his own experience and knowledge in such matters and upon the record in the cause, but he should not rely solely thereon. It appears that in the case before us the county judge relied upon the probate file, the petitions and schedules of services filed by the attorneys, and upon his own knowledge and experience. There is no evidence in the record of the reasonable value of such services to the estate or evidence of the customary charges for such services in the community. * * * the inadequacy of the record above mentioned would in itself warrant reversal * * * ."

It is thus seen that such expert testimony is required by our appellate courts. Being required, it should be compensated for. The court has not found the members of other professions performing like duties upon a gratuitous basis. They expect to be paid fair, reasonable, professional compensation for the time and effort they expend in testifying in court cases, and I know of no reason why lawyers should be required to contribute their time, skill, and services in like matters without compensation. For the reasons stated, compensation will be hereinafter fixed for the witnesses aforesaid.

B. E. Hendricks and Fred R. Baisden testified with respect to reasonable fees for Blackwell, Walker & Gray as special counsel. Francis M. Miller and Henry Sinclair testified as to reasonable fees earned by Lane, French, Primm, Lane & Carrier, and John J. Hunt, as counsel for the co-executors. Leland Hyzer and Stuart W. Patton testified as to reasonable fees and compensation to be awarded William A. Lane and Joseph R. Lillagore, as co-executors, for extraordinary services.

Ralph H. Ferrell and M. L. Mershon testified in behalf of the Dunspaugh-Dalton Foundation, Inc., as to reasonable compensation for all of the petitioning parties, and Ray M. Earnest, as counsel for the Dunspaugh-Dalton Foundation, Inc., has not only served as counsel for the residual beneficiary as to all petitioned matters, but has filed his answer to the petitions and indicated what in his opinion constitutes fair and reasonable compensation.

The court has had the benefit of observing the progress of the probate and administration of this estate since its inception. Notwithstanding that the court has participated in all of the proceedings had in this matter before the court, the files have been again reviewed, and the court has studied the exhibits offered, the over 750 pages of testimony taken, and has carefully analyzed and studied the recommendations of counsel. It is of great interest to note that outstanding attorneys eminently qualified to testify as expert witnesses, whose integrity is above question and

who stand to profit in no wise by the result of their testimony, have differed so greatly in their estimate of fair and reasonable value for the services necessarily performed and for which compensation is sought.

For the fees of special counsel Blackwell, Walker & Gray, the expert testimony varies from a low of $197,250 to a high of $650,000. Here the task of the court is to reconcile an honest difference of honorable men amounting to $452,750. On the attorneys fees for counsel for the co-executors as special compensation for extraordinary services rendered, the variance in fees by the testimony ranges from $500,000 high to a low of $100,000. The difference to be reconciled by the court is $400,000. On the question of fees for the co-executors for special services rendered by them in their capacity as such, the expert testimony indicates a top recommendation of $250,000 and a low of $50,000, or a difference to be reconciled by the court of $200,000.

There is much testimony in the record relating to the fixing of attorneys fees on the basis of schedules of minimum fees recommended by local bar associations. There is no doubt that the schedules of minimum fees are of great benefit to the courts. However, they are neither binding upon the courts nor upon counsel. A client's ability to pay cannot justify a charge in excess of the value of the service, and the fact that an estate of a decedent is of great value cannot of itself be the criteria of fixing enormous fees. On the other hand, lawyers should not undervalue their services. They must recognize at all times that they are dealing in intangibles. This was clearly recognized by Abraham Lincoln when he said, "A lawyer's time and advice are his stock in trade." The responsibilities assumed by counsel in the handling of important litigation is one of the controlling elements to be considered in arriving at fair compensation. In arriving at the conclusions in this opinion expressed, the court has determined that the schedule of minimum fees of the Dade County Bar Association does not apply. Since there was a written contract of employment and the manner of ascertaining a reasonable fee was provided for in that agreement, this does not constitute a contingent fee case. It is the opinion of the court that the elements contained in canon 12 of the code of ethics adopted by the Supreme Court of Florida on January 27, 1941 should control in this case. Briefly, the elements there set forth are as follows —

12. *Fixing the Amount of the Fees.* — In fixing fees, lawyers should avoid charges which overestimate their advice and services, as well as those which undervalue them. A client's ability to pay cannot justify a charge in excess of the value of the service, though his poverty may require a less charge, or even none at all. The reasonable requests of brother lawyers, and of their widows and orphans without ample means, should receive special and kindly consideration.

In determining the amount of the fee, it is proper to consider (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; (2) whether the acceptance of employment in the particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other employment while employed in the particular case or antagonisms, with other clients; (3) the customary charges of the Bar for similar services; (4) the amount involved in the controversy and the benefits resulting to the client from the services; (5) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client. No one of these considerations in itself is controlling. They are mere guides in ascertaining the real value of the service.

In determining the customary charges of the Bar for similar services, it is proper for a lawyer to consider a schedule of minimum fees adopted by a Bar Association, but no lawyer should permit himself to be controlled thereby or to follow it as his sole guide in determining the amount of his fee.

In fixing fees it should never be forgotten that the profession is a branch of the administration of justice and not a mere money-getting trade.

Reference will be made to the above as the application for compensation of each group is considered.

In determining the compensation to be paid the special trial counsel, Blackwell, Walker & Gray, the court has considered the fact that their work was undertaken on a contractual basis for which they were to be paid a fair and reasonable fee to be determined by the county judge. There was never any question of their being paid for their services and there was nothing contingent about it. The court has also considered the fact that from a dollars-and-cents standpoint, the estate of Ann V. Dalton has not benefitted by the services rendered by special counsel, as no assets or monies have been brought into the estate as a result of their efforts. The truth of the matter is that by virtue of this contest, the estate of Ann V. Dalton has been substantially and materially reduced dollars-and-cents-wise. This, of course, was not through any fault of special trial counsel. The real benefit to the estate of Ann V. Dalton that resulted from the work of special trial counsel is that the testamentary plan and intent of the testatrix has been sustained and will be carried out. The charitable beneficiaries in perpetuity of the beneficence of Mrs. Dalton will be benefitted as a result of the successful conclusion of the contest. The fact that the contest terminated as a result of voluntary withdrawal on the part of the contestant in no wise or in any manner diminishes the value of the services rendered by any one involved in the eyes of the court. The court recognizes that the work of special trial counsel was undertaken, the responsibility was assumed, the services were performed, and the services that were performed were necessarily performed for the

benefit and protection of the decedent's estate. The court takes into consideration that Blackwell, Walker & Gray are special trial counsel. They will not otherwise participate in the administration of the decedent's estate. They will receive no compensation for ordinary services. Blackwell, Walker & Gray assumed the responsibility of protecting for the benefit of charitable purposes a fund in excess of $10,000,000. They concluded their efforts successfully and discharged their duties in a most exemplary and commendable manner. In consideration of all of the testimony before the court and the records in this cause, it is now ordered and adjudged that fair and reasonable compensation for the firm of Blackwell, Walker & Gray for services rendered to the co-executors, be, and the same is hereby fixed in the sum of $450,000 and the co-executors be, and they are hereby authorized and directed to pay the same.

In arriving at the court's conclusion as to fair and reasonable compensation for counsel for the co-executors, Lane, French, Primm, Lane & Carrier, and John J. Hunt, the court has necessarily viewed their services in the light of their position and participation in the overall concept of the administration of the estate of Ann V. Dalton, deceased. The court cannot lose sight of the fact that William A. Lane, individually, and Joseph R. Lillagore, individually, were under attack, and that their personal reputations and their personal fortunes were placed in jeopardy by the proposed and actual contest and allegations and charges of Frances L. Cummings. That William A. Lane and his son, and other members of his firm, and John J. Hunt immediately went to work in a most energetic and active defense of these charges is understandable. The court has taken into consideration the fact that the responsibility for the defense of the contest was delegated to special trial counsel. Special trial counsel was put in charge of the handling of the preparation for trial. The court understands and fully appreciates that these attorneys for the co-executors did ably and diligently assist special trial counsel, and contribute to the preparation of the defense of the contest in every particular. The court must also take into consideration that counsel for the co-executors will be compensated for ordinary services rendered the co-executors in the administration of this estate. For that compensation, the minimum schedule of fees of the bar association will be considered. The compensation that will be awarded will be substantial by virtue of the very size and magnitude of the decedent's estate. In determining what should be considered as extraordinary legal services performed and rendered by counsel for the co-executors, the size and extent of the decedent's estate is a very material consideration. What might be considered extraordinary services in a reasonably small estate would not be considered at all in a vast or very substantial estate.

If this fact were not so, there could be no justifiable reason for the fixing or determining of compensation upon a percentage basis in any event for either counsel or personal representatives in the administration of estates. Here, as in the case of comments made about special trial counsel, there was no monetary benefit brought into this estate through the services of the attorneys for the co-executors. At best, they can be considered only as advisors and assistants to special trial counsel. That they contributed materially and significantly to the splendid preparation previously referred to of special trial counsel is recognized by the court. Being fully advised, and in consideration of all of the foregoing, it is the finding of the court, and it is ordered and adjudged that fair and reasonable compensation for extraordinary services necessarily rendered by the firm of Lane, French, Primm, Lane & Carrier and John J. Hunt, as counsel for the co-executors, be, and same is hereby fixed in the sum of $175,000 and the co-executors be, and they are hereby directed and authorized to pay the same.

In determining compensation for the co-executors, William A. Lane and Joseph R. Lillagore, for extraordinary services rendered as co-executors, the court again refers to the individual involvement of the co-executors in the essential elements of the contest that was precipitated. It is inescapable that a fair portion of the time spent and the work done and the efforts undertaken by these men were in their individual interests as well as in their representative capacities. As above referred to in commenting upon compensation for the attorneys for the co-executors here also, the court must consider that the co-executors will receive compensation in the amounts fixed by law for their ordinary services rendered in this estate. In the case of In re Lieber's Estate, supra, the Supreme Court of Florida said —

> "By using a percentage of the value of the estate as the method of determining compensation to be paid a personal representative for ordinary services, it is evident that the legislature recognized that the ordinary services to be performed and the attendant responsibility, in some measure at least, are relative to the value of the estate. This being true it must be expected that more ordinary or usual services will be required in a large estate than in a smaller one. If this were not the case there would be no justification for basing the compensation on a percentage of the value of the estate.
>
> "It follows therefore that a determination of what are extraordinary services must of necessity be made in light of the value or size of the estate, for services which would be extraordinary in a $5,000 estate might not be in a $50,000 estate."

Several trips outside of the state were made by the co-executors in preparing the defense of the contest. Their time, their counsel

and advice, and their research and personal efforts were contributed to the cause. They made several appearances in court during the actual progress of the litigation. They were the personal representatives of the decedent. As such, they had the primary duty and responsibility of making the vital decisions that had to be made from time to time in preparing the defense of the contest. Theirs was the first responsibility to see that the last will and testament of the decedent was preserved and carried out according to her wishes and desires. That they assumed this responsibility, discharged their obligations, performed their duties in this respect daily for a period of over ten months and successfully concluded the matter is recognized by the court. In consideration of the foregoing, and the court being fully advised, it is now ordered and adjudged that compensation for extraordinary services of the co-executors, William A. Lane and Joseph R. Lillagore, be, and the same is hereby fixed in the sum of $50,000, to be apportioned between them according to their contribution, and the co-executors be, and they are hereby authorized to pay the same.

Ray M. Earnest, as attorney for the Dunspaugh-Dalton Foundation, has served the foundation and the court well in these proceedings. The fixing of his compensation for services rendered the foundation in this matter has been requested. The court has considered the services of Mr. Earnest, the time spent, the novelty of the questions presented to him, and the responsibilities undertaken, and upon being fully advised, upon consideration thereof, it is ordered and adjudged that fair and reasonable compensation for the services rendered by Ray M. Earnest be, and the same is hereby fixed in the sum of $5,000, and the co-executors be, and they are hereby authorized and directed to pay the same.

It is ordered and adjudged that fair and reasonable compensation as expert witness fees for the witnesses appearing in behalf of the various interested parties before the court, be, and the same are hereby fixed as follows —

> To Ralph H. Ferrell, $1,800.
> To M. L. Mershon, $1,500.
> To Francis M. Miller, $1,500.
> To Henry Sinclair, $1,250.
> To B. E. Hendricks, $500.
> To Fred R. Baisden, $500.
> To Leland Hyzer, $300.
> To Stuart W. Patton, $300.

And the co-executors be, and they are hereby authorized and directed to pay the same.