**COMMERCE TRUST CO. et al. v. AYLWARD.**

**No. 12831.**

Circuit Court of Appeals, Eighth Circuit.

Oct. 2, 1944.

Paul Barnett and Watson, Ess, Groner, Barnett & Whittaker, all of Kansas City. Mo., for appellants.

J. L. Milligan and John C. Grover, both of Kansas City, Mo., for appellee.

Roger S. Foster, Sol., Milton V. Freeman, Asst. Sol., and Theodore L. Thau and David Ferber, Attys., Securities and Exchange Commission, all of Philadelphia, Pa., for Securities and Exchange Commission as amicus curiae.

Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

The question is as to the jurisdiction of the bankruptcy court, under an agreement which will be presently discussed, to fix the amount of the fees of an indenture trustee and its attorney, for services subsequent to the bankruptcy of the settlor, in administering the assets of three trusts securing some investment and savings certificates issued by the settlor—the indenture trustee being entitled under the indentures to liquidate the assets of the trusts and to make payment of the surrender-value liens of the certificate holders.

The indenture trustee has appealed from an order of the bankruptcy court, D.C., 53 F.Supp. 467, fixing an interim amount which the indenture trustee would be allowed to pay itself for such trustee services and an interim amount which it similarly would be allowed to pay its attorney for legal services. The contention here is that the bankruptcy court had no authority or right to fix any amounts to which the indenture trustee and its attorney were entitled for services, but that the fixing of

such amounts was entirely the indenture trustee's own prerogative.

The trust indentures provided that the trustee should be entitled to "reasonable and proper compensation" and to "all proper outlays and expenses * * * including counsel fees", and that such compensation, outlays and expenses should constitute a prior lien on the trust assets. It was further provided that, on any default by the settlor under the indentures, the trustee should have the right to "realize" upon the securities and apply the proceeds to the payment of (1) "the reasonable compensation, costs and expenses of all kinds of the Trustee in the administration of the trust, including counsel fees", and (2) the surrender value of the certificates—with any surplus to go to the settlor, its successors or assigns.

After the bankruptcy of the settlor, however, the indenture trustee had entered into an agreement as to each of the trusts with the trustee in bankruptcy and the bankrupt—which had been filed in the bankruptcy proceedings and approved by the bankruptcy court—that the indenture trustee would thereafter "do none of the following things without first obtaining the approval of the bankruptcy court:   (a) Sell any asset or assets in the trust fund; (b) Determine the surrender value of any * * * certificate for the purpose of liquidation and distribution as provided by the trust indenture;   (c) Fix the date or amount or make payment of any distribution or partial distribution of cash to certificate holders pursuant to the provisions of the trust indenture;   (d) Pay any attorney's fees for legal services rendered in connection with the administration of the trust estate;   (e) Apply any of the assets of the trust estate to the compensation * * * for its services as trustee under the trust indenture."   There was a further provision to the effect that it was agreed that the indenture trustee was entitled to reasonable compensation for its services and to its reasonable expenses including attorney's fees, "and that all of such compensation and expenses constitute reasonable charges against the trust estate in the possession of such trustee, all subject to the approval of the Court."

The agreement had been made after complications and disputes had begun to arise in connection with the liquidation and distribution of the trust assets.   The indenture trustee wanted to submit some of the questions which confronted it to a court of equity for determination.   The trustee in bankruptcy contended that any question in the liquidation and distribution ought to be determined by the bankruptcy court, because there was an excess of assets in the trusts over the surrender values of the certificates, which he argued would ultimately go into the bankruptcy estate, and hence the bankruptcy estate had an interest in and would be affected by the indenture trustee's actions.

Some time later, because of the agreement, the indenture trustee filed an application in the bankruptcy court for approval of the payment to itself of the sum of $46,500 out of the three trusts as trustee's compensation, the application stating that "it cannot at this time definitely fix the exact amounts of compensation that it is entitled to for all of the services it has already performed" but that "the reasonable value of the services already rendered are in excess of the amounts which it desires at this time to withhold and receive upon account."   It filed a similiar application for approval of the payment of $10,000 on account to its attorney for legal services.

The bankruptcy court held a hearing on the applications and entered an order approving a payment of $27,900, in trustee's compensation "at this time" and a payment of $6,000 in attorney's fees.   The court declared that the sums for which approval of payment was sought in the applications were "more than can be justified as an interim allowance" and that "The opportunity for subsequent adjustment of inequities after liquidation is complete * * * will insure against any mistakes."   53 F.Supp. at page 470.

The indenture trustee contends, as suggested above, that the bankruptcy court had no authority or right to fix the amount of its compensation or the fee of its attorney, even under the agreement made by it in attempted settlement of some of the controversies with the trustee in bankruptcy; that the indenture trustee always had had and continued to retain the prerogative of fixing the value of its own services and those of its attorney and was merely required by the agreement to submit any action which it proposed to take in effectuation of its determinations to the bankruptcy court for assent or veto;   and that it of necessity must be held that the agreement "did not authorize the trial court to do more than

could have been done by an injunction to permit time to try a plenary suit upon a charge of wasteful abuse of discretion upon the part of the indenture trustee."

These contentions seem to us a bit artificial and unusual in the situation and hardly in spirit with the apparent object of the agreement to avoid unnecessary plenary litigation delayful of the liquidation and the disposition of the surplus assets. In this connection it should be noted that we have heretofore held, in some litigation brought against the indenture trustee outside the bankruptcy court by some of the certificate holders, that the agreement which is here involved and the bankruptcy court's approval of it had properly brought within the jurisdiction of the bankruptcy court the certificate holders' rights to an equitable lien upon the surplus assets of the trust, for the difference between the sums they had paid in and the amounts of their surrender values, so that the certificate holders would be required to go into the bankruptcy court to have that matter determined as against the indenture trustee, the trustee in bankruptcy and the general creditors of the bankruptcy estate.[1] Redmond v. Commerce Trust Co., 8 Cir., 144 F.2d 140.[2] The opinion in that case also shows, 144 F.2d at page 153, that in one of the attempts of the certificate holders to have their right to an equitable lien on the surplus assets adjudicated in state court, the indenture trustee, in seeking to escape such plenary litigation by the certificate holders upon the question, had pleaded that the bankruptcy court "has prior and exclusive jurisdiction to determine whether or not the said * * * (certificate holders) are entitled to any preference, priority or lien, upon the proceeds of the collection of such assets, over, above and in addition to the amounts of their surrender values as provided in their said certificates"—a position somewhat different from the "veto-power" view now contended for in relation to the trustee's own right to compensation and attorney's fees.

▉▉ Without regard momentarily for the agreement here involved, where the amount of a trustee's compensation is not specifically fixed by statute or agreement, the trustee ordinarily is entitled to reasonable compensation for his services, whether the trust instrument does or does not so provide, and in either situation, in case of a dispute, where no provision has been made for disposing of the question, reasonable compensation means such compensation as may be ultimately approved or allowed by a court of competent jurisdiction, in a proper proceeding brought by either party. Restatement, Trusts, § 242, Comment b; Loud v. St. Louis Union Trust Co., 313 Mo. 552, 281 S.W. 744, 760-761; McGee v. Newton Burial Park, Mo. App., 290 S.W. 644, certiorari quashed State ex rel. Bull Dog Auto Fire Ins. Ass'n v. Bland, 316 Mo. 559, 291 S.W. 499. This rule applies generally also to extra services by the trustee which have become necessary because of some special situation in connection with the trust—such as was the case here as to part of the services involved. "All the courts agree that he [the trustee] is not entitled to recover [or retain] for his services the amount which he himself has fixed as proper remuneration, unless the court finds that the amount is reasonable. In other words, where he renders extra services he can recover [or ultimately retain] only so much as the court deems reasonable compensation under all the circumstances." 2 Scott on Trusts, § 242.2 p. 1389.

▉▉ Even therefore if no agreement had been made between the indenture trustee and the trustee in bankruptcy, such as is here involved, the indenture trustee clearly could not have retained any compensation fixed by itself for its services which a court having proper jurisdiction of the question should refuse to approve

---

[1] The interest of the bankruptcy estate in the admitted surplus of assets over surrender value liens clearly would have given the bankruptcy court jurisdiction to liquidate the trust assets and determine the distributive rights therein, if the indenture trustee had chosen to turn over the assets to the bankruptcy court for that purpose. The bankruptcy court equally must be held to have jurisdiction of any surrender of partial control by the indenture trustee, to the extent of the powers surrendered which are within its general bankruptcy jurisdiction. Cf. In re Prokop, 7 Cir., 65 F.2d 628, 630; Harris v. Avery Brundage Co., 305 U.S. 160, 164, 59 S.Ct. 131, 83 L.Ed. 100. The question in the present case is simply as to the nature and extent of the power or control that the agreement actually placed within the bankruptcy court's jurisdiction.

[2] Certiorari denied — U.S. —, 65 S. Ct. 187.

and allow. When the indenture trustee, in recognition of the interest of the bankruptcy estate in the liquidation by reason of the surplus assets in the trusts, made an agreement with the trustee in bankruptcy that it would thereafter make no payments of compensation to itself "without first obtaining the approval of the bankruptcy court" and that it should be entitled to reasonable compensation "subject to the approval of the Court," we think, from the language used, the practical object intended to be accomplished, and the recognition made of the bankruptcy trustee's interest in the trust assets, that the indenture trustee reasonably must be held to have agreed that the bankruptcy court should have jurisdiction to determine the amount of compensation to which it was properly entitled.[3]

What we have said as to the jurisdiction of the bankruptcy court to fix the amount of the indenture trustee's compensation under the agreement is here applicable also to the amount to be allowed as attorney's fees, under the language and purpose of the agreement and in the light of the further fact that the indenture trustee's attorney had participated in drawing the agreement, had himself executed it on behalf of the indenture trustee, and must be regarded as having rendered his services subject to its provisions.

We accordingly hold that the bankruptcy court had jurisdiction, by virtue of the agreement, to exercise its bankruptcy powers to fix the amount of the indenture trustee's compensation and the fees of its attorney, for their liquidation services. The question as to the amount of any interim allowance that should be made on account was for the discretion of the trial court, and the record affords no basis for any contention of abuse. The allowances were expressly made subject to "the opportunity for subsequent adjustment of inequities after liquidation is complete." Cf. In re Paramount-Publix Corporation, D.C.S.D.N.Y., 10 F.Supp. 504; Bridgeport-City Trust Co. v. First Nat. Bank & T. Co., 124 Conn. 472, 200 A. 809, 117 A.L.R. 1148.

The indenture trustee says in concluding its brief that "This appeal is much more important than the mere questions as to when and in what amount the Indenture Trustee and its attorney should be paid for their services" and that it involves "the single vital question—Does the bankruptcy court have jurisdiction to administer the trust funds in the hands of such trustee?" That general question in all its implied aspects can hardly properly be said to be within the compass of the limited issues of this proceeding. As a practical matter, all that is involved here is whether the agreement made by the indenture trustee can be said to have been intended to give the bankruptcy court the right to fix the amount of the trustee's compensation and attorney's fees which the indenture trustee would be entitled to pay itself and its attorney.

Affirmed.

---

[3] In Mickens v. Lawrence Paper Mfg. Co., 130 Kan. 149, 285 P. 624, a statute providing that no contract for attorney's fees in a workmen's compensation case should constitute an enforceable lien unless it was "approved" by the court was construed to mean, not that the court was alternatively required simply to accept or reject the contract as made, but that it had the right as part of its approval power to fix the amount for which the contract should be effective.