**332**

In the Matter of GAC CORPORATION, et al., Bankrupts.

In the Matter of GAC PROPERTIES, INC., et al., Bankrupts.

In the Matter of GAC PROPERTIES CREDIT, INC., Bankrupts.

Bankruptcy No. 76–131–BK–NCR–B.

United States District Court, S.D. Florida.

April 18, 1985.

S.Z. Bennett, Miami, Fla., Theodore Bollt, C.P.A., Hollywood, Fla., Richard H. Millen, Los Angeles, Cal., Trustees.

Larry J. Hoffman, Greenberg, Traurig, Askew, et al., P.A., Miami, Fla., for Trustees.

Joseph A. Gassen, Paul, Landy, Beiley & Harper, P.A., Miami, Fla., for Beneficiaries.

## ORDER REGARDING COMPENSATION FOR TRUSTEES OF GAC LIQUIDATING TRUST

THOMAS C. BRITTON, Bankruptcy Judge.

These proceedings involve a Chapter X arrangement under the Bankruptcy Act of 1898, as amended. A Restated Joint Plan of Reorganization was confirmed in 1980 and the case was closed in 1981 following the entry of a Final Decree.

In February, 1985, the case was reopened under § 2a(8) of the former Act [1] by an Order to Show Cause (C.P. No. 4087). That Order directed the three trustees of the GAC Liquidating Trust to show cause on March 11:

> "(1) why they should not be surcharged in the amount of any compensation received from this trust, whether directly or indirectly, in excess of the amount authorized by this court, and (2) why each of them should not be replaced as trustee."

At the hearing of March 11, the trustees moved (C.P. No. 4091a) that the Order be vacated "for lack of subject matter jurisdiction". The trustees also responded and were heard on the merits.

## SUBJECT MATTER JURISDICTION

■ The Final Decree entered in October, 1981 (C.P. No. 4062), expressly provided that:

> "this Court retains jurisdiction to (a) construe, interpret and enforce the Plan, and all orders and decrees at any time entered in these proceedings including, but not limited to, this Final Decree and the rights and claims of any person set forth in or derived under the Plan and/or such orders and decrees..."

The trustees have on three occasions invoked this court's retained jurisdiction to construe and enforce the Plan and this court's related orders. *Bollt, et al. v. Collier County*, Adv. No. 605; *Bollt, et al. v. State of Florida*, Adv. No. 606; *Matter of G.A.C. Corp.*, filed in District Court in February, 1984.

In this instance the retained jurisdiction was exercised when this court was advised by one trustee that the other two trustees had requested and received sums more than double the compensation authorized by this court for their services. The trustees and their attorneys insist that these payments are permissible under the terms of the trust.

The trustees were appointed by this court and their maximum compensation was fixed in a 1980 Order Confirming the Trustees' Plan (C.P. No. 2908). There are some 14,000 widely scattered beneficiaries of this trust who cannot reasonably be expected to monitor the trustees' compensation. No other court's jurisdiction has been invoked with respect to this matter. It is, therefore, appropriate to exercise this court's retained jurisdiction to construe, interpret and enforce the Order Confirming the Trustees' Plan and the rights of these trustees under that Order. *See Commerce Trust Co. v. Aylward*, 145 F.2d 113 (8th Cir.1944).

The trustee's motion to vacate the order to show cause is denied.

## COMPENSATION AUTHORIZED FOR THE TRUSTEES

■ The 1980 Joint Plan directed the creation of a liquidating trust to liquidate and distribute to the general unsecured creditors all property not essential to the reorganized corporation. The trust was funded with $49.7 million worth of assets, 63 percent of which was land in Florida, Arizona and Belize. The rest were mortgage notes and cash. The creditor-beneficiaries, whose undisputed claims totalled $256 million, have received 4,000,000 trust units evidencing their pro rata participation in the liquidating trust.

The Order Confirming the Trustees' Plan (C.P. No. 2908) ratified and approved a Declaration of Trust for the GAC Liquidating Trust, filed September 9, 1980 as Exhibit C of the Revisions of Documents Previously Submitted for Approval (C.P. No. 2901). The Declaration of Trust, § 11.1, provides that:

> "*Compensation for Services as Trustee.* In lieu of commissions fixed by law for

---

**1.** The Bankruptcy Reform Act of 1978, 11 U.S.C., substantially amended the former Act, but provided that:

> "A case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this Act had not been enacted..." Pub.Law 95–598, § 403(a).

trustees, the Trustees shall each receive the sum of Twenty-Four Thousand and No/100 Dollars ($24,000.00) per annum *as full compensation for their services.* The compensation of the Trustees may be increased from time to time in the Trustees' discretion, but *such increases are not to be greater than 7.5 percent per annum on a cumulative basis...*" (Emphasis added).

At no time pertinent to this trust have any commissions been fixed by law for these trustees. These trustees have exercised their discretion to increase their compensation to the maximum degree authorized under the second sentence in the foregoing restriction. Their appointment took effect on October 1, 1980. They paid themselves as "executive compensation" at the rate of $24,000 per annum for the balance of 1980. They paid themselves $24,450 during calendar 1981, $26,284 during 1982, $28,255 during 1983 and $30,374 during 1984, or a total of $115,363 for the period of their service through December 31, 1984. All of these payments were authorized by this court through its approval of the foregoing provision for their compensation. This was the *only* compensation which these trustees were authorized by this court to pay themselves "for their services".

## COMPENSATION ACTUALLY PAID TO THE TRUSTEES

On August 25, 1981, less than a year after their appointment, the trustees approved in principle the concept that two trustees, Bollt and Millen, would be employed and paid additional sums by the trust for their services to the trust. Bollt, who was a C.P.A. and active real estate investor, would perform "accounting and consulting" services and Millen, a Los Angeles attorney and active real estate inves-

tor, would perform certain legal services. The remaining trustee, Bennett, a real estate appraiser, neither sought nor received any additional compensation for his services.

Thereafter, Bollt requested and received an additional $117,175 for his services through 1984 and Millen received $193,443.[2]

During the time in question, at an expense of well over $1 million, the trust has employed two large accounting firms, one of the largest law firms in Florida on a general retainer, and a number of other attorneys throughout the country for special purposes, together with a full-time Manager and staff.

The trustees initially employed a Manager who was discharged in February, 1982. Roberto Bollt, the son of the chairman/trustee Bollt, was employed by the trust in May, 1981. He has replaced the original Manager. Roberto is paid a salary and is also given a car allowance, both of which are increased at regular intervals. The total compensation, including the car allowance, paid to Roberto for the period in question is $103,134.

The actual compensation paid by the trustees to trustee Bollt for his services to the trust ($232,538) is, therefore, more than double the maximum amount authorized by this court ($115,363) and, if the compensation paid his son is included ($335,672), is almost three times the compensation authorized by this court.

The compensation paid trustee Millen ($308,806), is over two and one-half times the compensation authorized by this court ($115,363).

## THE TRUSTEES' CONTENTION

It is the trustees' contention, supported by their attorneys,[3] that because these

2. There is a discrepancy between the payments acknowledged by each individual in his Affidavit and the amounts accrued and reported in the audited Form 10–K Annual Report filed by the Trust with the S.E.C. I have used the larger, audited figures. Bollt's compensation was calculated at $175 per hour throughout the period

in question. Millen's compensation was calculated at $175 an hour until 1983, during which it was increased to $225 per hour.

3. Although the counsel retained by the trustees were consulted as to the propriety of the foregoing payments, before the payments were re-

trustees were authorized to employ accountants and attorneys, they were also authorized to employ themselves in those capacities and pay themselves additional compensation for those services, notwithstanding the express limitation contained in the Declaration of Trust. They rely upon § 737.402(2)(y) of the Florida statute governing trust administration:

"*Unless otherwise provided in the trust instrument,* a trustee has the power: (y) To employ persons, including attorneys, auditors, investment advisors, or agents, *even if they are the trustee or associated with the trustee,* to advise or assist the trustee in the performance of his administrative duties..." (Emphasis added.)

The trustees' counsel, after the fact, have collected a number of cases which they believe support their approval of the foregoing payments requested by two of their clients. I have reviewed these cases but find none to be in point.

For example, the first case cited in the trustees' Certificate of Compliance (C.P. No. 4096) filed in response to the Order to Show Cause is *In re Lieber's Estate,* 103 So.2d 192, 195, 201 (Fla.1958). The court reversed and remanded an unsupported court award to executors of a decedent's estate for "extraordinary services", recognizing that such an award, if properly supported, was permitted by the then statute, § 734.01(1). That statute provided a percentage fee for "ordinary services" of the personal representative and authorized:

"such further compensation as the court may deem just and reasonable for any extraordinary services ... necessary to be performed on behalf of the estate."

Neither the Declaration of Trust nor the present Florida statute, § 737.402, contains any such provision.

In that case, the court also reversed and remanded an unsupported award to the executors' attorneys', noting in passing that:

"one of the co-executors was one of the members of the firm of attorneys which was retained to represent the co-executors and the estate. There is nothing wrong with this. The statute recognizes that such a circumstance may occur for Sec. 734.01(4) F.S.A. provides that if a personal representative is a practicing attorney, and does render legal services in connection with his duties, he shall be allowed reasonable fees for the legal services he renders. We construe this to mean that he shall receive compensation for the legal services he renders in addition to the compensation paid him for executorial services."

The statute applicable to our case, like the statute there, lets the fiduciary employ himself, but in the cited case, as has been noted, the statute fixes a fee for "ordinary services" and expressly permits a court to award further compensation for "extraordinary services". In our case, there is no analogous provision. In our case, the Declaration of Trust is recognized by the statute as controlling and it provides a fixed sum "as full compensation for their services."

For these reasons, the cited case sheds no light on the construction of either the Declaration of Trust or the statute which is before us. A similar analysis of the other authorities assembled to support the trustees would unnecessarily extend this Order. Suffice it to say that: (1) not one construes § 737.402(2)(y), the 1974 statute which is before us, or any similar statute, and (2) not one construes a trust instrument or statute which contains the restriction which appears in this Declaration of Trust.

### INTENT AND PURPOSE OF § 11.1 OF THE DECLARATION OF TRUST

The intent, purpose and effect of § 11.1 in the Declaration of Trust, which has been

quested or made, and counsel sanctioned these payments, no written opinion or other memorandum exists reflecting their advice on this sensitive point nor any record of research upon which the conclusion was based. There does

not appear to have been any consideration given by either the trustees or their counsel to seeking clarification of the propriety of this additional compensation from this or any other court. It would never have been authorized by this court.

quoted above, is that no trustee may receive more for all services on behalf of the trust than $24,000 per annum, plus an annual increase of 7.5% calculated October 1, 1981 and each year thereafter on a cumulative basis. Of course, this provision does not prevent reasonable reimbursement for actual necessary expenses incurred in performing the trustee's services.

What he is forbidden to receive directly, he may not receive indirectly in any guise or form. Specifically, he may not be paid for additional, extraordinary or special services however unique or valuable they may be. Nor may he receive compensation from the trust indirectly in the form of money paid his firm, his son or other persons closely related to him.

It is immaterial, therefore, whether the amount of the requested additional compensation from the trust is reasonable or not, or whether it was authorized and found to be reasonable by the other two co-trustees. The Declaration of Trust does not give them that discretion.

I reach the foregoing conclusion from the plain language of § 11.1 and from the fact that any other interpretation would render § 11.1 completely ineffectual. In the final analysis, any other interpretation would leave the compensation of these trustees entirely to their discretion. That could not have been the purpose of this explicit limitation.

Unlike the compensation of the fiduciaries of decedents' estates and many other express trusts, the compensation of these trustees is not required to be reviewed by a court or any other independent agency. *Cf. Commerce Trust Co. v. Aylward*, 145 F.2d 113, 115 (8th Cir.1944). It was particularly appropriate in this instance, therefore, that a fixed and absolute limit be specified.

The number, the dispersion, and the frequent transfer of the interests of the beneficiaries of this trust which are traded on a national exchange, make it obvious that the beneficiaries cannot police the reasonableness of the trustees' compensation. The compensation of these trustees has been disclosed to the beneficiaries only through an annual Form 10–K filed with the S.E.C. and made available to the beneficiaries upon request. The 1983 10–K for this trust contains 49 pages. The first reference to trustee compensation is on page 38, note 6 to the financial statement. It does not reveal the restriction in § 11.1. That appears on page 45. Nor does it reveal that Bollt's son is on the payroll. That appears on page 47.

Since time immemorial, it has been recognized that most men cannot be expected to serve the interests of their trust when those interests conflict with their personal interests. In the words of the court in *Fulton National Bank v. Tate*, 363 F.2d 562, 571 (5th Cir.1966):

"The rules of undivided loyalty have developed as defensive responses of the common-law nervous system to impulses of self-interest. The rationale of these well-settled principles of undivided loyalty is clear:

'[I]t is generally, if not always, humanly impossible for the same person to act fairly in two capacities and on behalf of two interests in the same transaction. Consciously or unconsciously he will favor one side as against the other, where there is or *may be* a conflict of interest. If one of the interests involved is that of the trustee personally, selfishness is apt to lead him to give himself an advantage. If permitted to represent antagonistic interests the trustee is placed under temptation and is apt in many cases to yield to the natural prompting to give himself the benefit of all doubts, or to make decisions which favor the third person who is competing with the beneficiary.'

Bogert, Trusts and Trustees § 543, at 475–76 (2d ed. 1960) (Emphasis added). See also 2 Scott, Trusts § 170 (2d ed. 1956); 4 id. § 502, at 3235–36; 54 Am. Jur.Trusts § 311–315 (1945). And in accord with this rationale, the beneficiary need only show that the fiduciary allowed himself to be placed in a position

where his personal interest *might* conflict with the interest of the beneficiary. It is unnecessary to show that the fiduciary succumbed to this temptation, that he acted in bad faith, that he gained an advantage, fair or unfair, that the beneficiary was harmed. Indeed, the law presumes that the fiduciary acted disloyally, and inquiry into such matters is foreclosed. *The rule is not intended to compensate the beneficiary for any loss he may have sustained or to deprive the fiduciary of any unjust enrichment. Its sole purpose and effect is prophylactic: the fiduciary is punished for allowing himself to be placed in a position of conflicting interests in order to discourage such conduct in the future.* Though equity protects the beneficiary with a gentle wand, it polices the fiduciary with a big stick. The trustee must avoid being placed in such a position, and if he cannot avoid it, he may resign, or fully inform the beneficiaries of the conflict, or, upon so informing the court, request approval of his actions. Otherwise, he proceeds at his peril." (Emphasis added).

This case applied Georgia law, but I am not aware of any Florida decision that would require a different conclusion.

In view of the strong legal tradition reflected in Judge Brown's opinion and the absence as to this trust of any practical safeguard against a trustee's self-interest, it is certainly probable that the framers of § 11.1 intended to eliminate a conflict of interest by providing a fixed all-inclusive compensation for these trustees. A seasoned lawyer, accountant and real estate appraiser, all with extensive experience in the real estate market, were chosen deliberately to provide the skills and experience necessarily involved in discharging this trust. The substantial compensation provided for the trustees reflects an understanding that such skills and experience would be used. *Fine v. Weinberg,* 384 F.2d 471, 474 (4th Cir.1967).

The size and resources of this trust assured that the trust could afford to employ the best legal, accounting, appraisal and real estate marketing talent and these trustees were expected to select and supervise that talent, not displace it. Without denegrating the skills of these trustees, it is fatuous to suggest that they were unique. Florida and the other states in which the affairs of this trust were conducted are amply stocked with those skills which are readily available at less than the generous rates paid by these trustees to themselves. These trustees were not forced to hire themselves, and if they did so, they had been told through the Declaration of Trust what they would be paid "as full compensation for their services".

In short, every consideration supports a literal application in this case of the compensation limit specified in § 11.1 of the Declaration of Trust.

Trustee Millen's Affidavit (C.P. No. 4094), in response to the Order to Show Cause, includes the following defense for the payments he approved for trustee Bollt and those Bollt approved for him:

"Many of the extraordinary services performed by me and Mr. Bollt for which payment was made from the assets of the Trust avoided the necessity of hiring, at substantial additional expense, a professional manager for the Trust, as specified in Section 9.5 of the Declaration of Trust, to replace the Manager who had been employed through February 10, 1982." (¶ 20).

Section 9.5 of the Declaration of Trust provides that:

"The Trustees *shall* engage the services of a professional manager for the Trust who shall be called the Manager and who may be replaced by the Trustees with or without cause." (Emphasis added).

These trustees were specifically required to employ a professional manager, not merely permitted to do so at their discretion. Instead, they chose to replace the one they hired with Bollt's son and with their own services at $175 and $225 an hour, and they did so in the interest of economy! The inference is plain from Millen's statement that Bollt's son is not a

professional manager and does not, therefore, meet the requirement of § 9.5.

There is no justification in these circumstances for the extra payments to Bollt and Millen. I find that the intent, purpose and effect of § 9.5 of the Declaration of Trust is that the trustees must employ an independent professional manager to whom they may delegate the management of the trust under their supervision. That intent is inconsistent with the performance of that function by themselves. It is also inconsistent with the employment of the son or other person closely connected with any trustee.

## THE APPROPRIATE REMEDY

■ It first appeared to me that because these trustees sought and received the opinion of counsel approving what they wanted to do and because what they did was disclosed, at least in theory, to the beneficiaries without any overt protest over a period of two years,[4] this court should merely construe the pertinent provisions, tell the trustees to mend their ways in the future, and retain jurisdiction to review the reasonableness of the payments received.

There are two reasons why that remedy would be inadequate. In the first place, it falls far short of the prophylactic purpose of the rule recognized and applied by the Fifth Circuit in *Fulton National Bank v. Tate,* cited and quoted above. Unless the two trustees who received more than twice the authorized compensation are required to return that money to the trust, this court has not enforced the terms of the trust nor will it discourage the next fiduciary from attempting a similar gamble. The beneficiaries of trusts established by this court are entitled to more from this court. *See also Childs v. National Bank of Austin,* 658 F.2d 487, 491 (7th Cir.1981).

Secondly, it is unrealistic to believe that a court, with or without the help of disinterested attorneys, accountants and other experts could accurately review and assess the necessity for, the benefits of and the reasonable value of the services claimed to have been performed by these two trustees over the past two years. None of those services was performed before this court. There is no adverse party or unrelated party able to assist in such an assessment. Such a review would be as difficult and unreliable as it would be expensive to the trust estate.

Trustees Bollt and Millen are ordered to pay back to the trust within 30 days all compensation received by them from the trust in excess of the sum authorized by § 11.1 of the Declaration of Trust. For this purpose, I do not include the payments made to Bollt's son. The payments recited above were only those accrued through December 31, 1984 as reported by these trustees. I am unable, therefore, to fix that sum precisely here. Under the circumstances here, this obligation shall not accrue interest until 30 days after the date of this order.

It must be anticipated that the two trustees will seek review of this order and will be in no position to enforce or defend it on behalf of the trust. Furthermore, they will be at least to some extent distracted from the single-minded attention this trust deserves. It is due to be completely discharged on September 30, 1987. The third trustee had previously submitted his resignation. I hope that he will reconsider that decision and elect to remain at his post. In addition, the employment of Bollt's son and his qualification to serve as the mandatory professional manager of the trust must be reviewed and resolved by the trustees as promptly as possible.

For these reasons, trustees Bollt and Millen are replaced as trustees forthwith by A.H. Blake and Theodore C. Slack. Mr. Blake is asked to serve as temporary chairman.

4. The first payments were made in January, 1982, but the Form 10–K which first reflected these payments, was not prepared until March, 1983, almost two years before this court's Order to Show Cause was issued.

 

In reaching the foregoing conclusions, I have not overlooked §§ 9.2(b), 9.4, 12.2, 12.-3, or 12.6 of the Declaration of Trust.

Section 9.2(b) of the Declaration of Trust provides that the trustees may consult with a member of the Florida Bar to be selected by them:

> "and the trustees shall not be liable for any action taken or suffered by them in accordance with advice of such counsel, provided such counsel was selected and retained with reasonable care."

Whatever the scope of this provision may be, it was not intended to relieve a trustee from repaying excessive compensation received by him from the trust. Otherwise, the trust would be obliged to look to counsel for recoupment.

Section 9.4 provides indemnification from the trust for certain judgments against a trustee. Here again, that provision was not intended to embrace the liability imposed by this Order.

Section 12.2 provides that:

> "any trustee may be removed at any time, with or without cause, by the holders of two-thirds (⅔) in interest of the Units then outstanding"

and § 12.3 provides for the election of a successor trustee in certain instances. The procedure provided is a nomination by the remaining trustees and an election by the trust certificate holders "within one year thereof". These provisions have no application here where the replacement of two trustees becomes necessary through the exercise of this court's retained jurisdiction to construe, interpret and enforce its orders in this case. The permissive provisions in § 12.6 for the appointment of a successor trustee by a State court are only applicable where a vacancy persists for 60 days.

I am also mindful of the fact that this Order departs from the conclusion and remedy proposed by the special counsel drafted by this court to represent the beneficiaries at the hearing of March 11 in the Order to Show Cause. With the grateful thanks of this court for his able assistance, he is now relieved of further responsibility in this matter in view of the fact that: (a) he ought not to be charged with the defense of a position he did not advocate and (b) the disinterested successor trustees can adequately represent the interests of the beneficiaries. Jurisdiction is specifically retained to provide him reasonable compensation upon motion, notice and hearing, after which this case will again be closed.