**In the Matter of GAC CORPORATION, et el., Debtors.**

No. 85–2684 Civ.

United States District Court, S.D. Florida, Miami Division.

Aug. 26, 1986.

Richard Garrett, Miami, Fla., for appellants.

William Courshon, Darrey Davis, Steel Hector & Davis, Miami, Fla., for respondents.

## MEMORANDUM DECISION

SCOTT, District Judge.

### Introduction

Appellants, Theodore Bollt and Richard H. Millen, are trustees to a thirty-seven million dollar liquidating trust.[1] They are two of three trustees who were appointed pursuant to the Bankruptcy Court's order for the liquidation of various properties of the debtor—GAC Corporation.

The liquidating trust was organized under the laws of Florida and confirmed by the Bankruptcy Court on September 12, 1980. The trust assets consist primarily of unimproved real property, notes and mortgages. The real property is located in several jurisdictions.

The gravamen of the appeal concerns Appellants' hiring of themselves to perform professional services for the trust above and beyond their duties as trustees. Judge Britton determined that the compensation which they received exceeded that specifically provided for in the trust instrument. Judge Britton then concluded that

---

1. Mr. Bollt is a certified public accountant and Mr. Millen is an attorney.

Appellants' acts were in contravention of the trust instrument and, thus, constituted a conflict of interest. Judge Britton, however, based his conclusion not upon a finding of bad faith on the part of Bollt and Millen, but rather on the prohibitive language of the trust instrument as well as on Florida law which prevented Appellants from hiring themselves to perform professional services for additional compensation.

Appellants have raised several issues on appeal: (1) whether the Bankruptcy Court had jurisdiction to enter a show cause order to Appellants regarding their extra compensation; (2) whether the trust instrument (and Florida law) prohibit(s) Appellants from hiring themselves for non-trustee services; (3) whether the Bankruptcy Court deprived Appellants of due process when it determined that expert testimony regarding the necessity of extra work and the reasonableness of the compensation which Appellants were paid was unnecessary; and (4) whether the Bankruptcy Court erred when it removed Appellants from the trust and imposed a surcharge without holding an evidentiary hearing regarding the necessity of the services and the reasonableness of the compensation?

### The Trust Instrument

The logical starting point is the trust instrument itself. The portions of the instrument relevant to this appeal include:

Section 1.1 provides—

*Objective and Purpose of Trust.* The objective of this Trust is the liquidation of the Designated Assets constituting the Trust Estate.... The Trust's sole purpose is to conserve, protect, and sell the Trust Estate and collect and distribute the income and proceeds thereform to the Trust Certificate Holders after payment of, or provision for, expenses and liabilities.

Section 5.2 of the Declaration of Trust limits the duration as follows:

*Duration.* Unless sooner terminated as hereinafter provided, this Trust shall continue until September 30, 1987, seven (7) years from the date hereof, but may be extended by the Trustees upon the approval of the majority of the Units outstanding, for two (2) additional three (3) year periods if required to fulfill the purpose of the Trust[.] (the liquidation of all Designated Assets)

Section 11.1 of the Declaration provides for the full compensation to the Trustees as follows:

*Compensation for Services as Trustee.* In lieu of commissions fixed by law for trustees, the Trustees shall each receive the sum of Twenty-Four Thousand and No/100 Dollars ($24,000.00) per annum as full compensation for their services. The compensation of the Trustees may be increased from time to time in the Trustees discretion, but such increases are not to be greater than 7.5 percent annum on a cumulative basis. In the event of any substitution of or change in the Trustees, each Trustee shall receive compensation based only upon such period of time as said Trustee as in office.

Section 7.2(8) details the trustees' powers as follows:

*Specific Powers Exercisable Without The Consent of the Trust Certificate Holders.* Subject to the provisions of Article I, the Trustee shall have the following specific powers, exercisable without the consent of the Trust Certificate Holders ...:

.    .    .    .    .

(8) to do and perform any acts or things and only those acts or things including the power to borrow money, necessary or appropriate for the conservation, protection and sale of the Trust Estate, and the liquidating thereof in accordance with the objective and purpose of this Trust as set out in Section 1.1, including to employ a Manager and such agents and staff and to retain the services and or facilities of any *other* person, firm or corporation (including but not limited to Real Estate Brokers and Finders), and to confer upon them such authority as the trustees may deem expedient, and to pay reasonable compensation thereof as is more particu-

larly set out in Section 9.5 hereof and to maintain an office or facility for the Trust.... (emphasis added)

Section 9.5 of the Declaration provides: *Employment Manager.* The Trustee shall engage the services of a professional manager for the Trust who shall be called the Manager and who may be replaced by the Trustees with or without cause....

### Subject-Matter Jurisdiction

The Bankruptcy Court based its finding that it had jurisdiction on two grounds: (1) the Final Decree had expressly reserved it; and (2) the Trustees themselves had invoked the Court's retained jurisdiction on three separate occasions to construe and enforce the Plan.[2] In the Bankruptcy Court's opinion, it was exercising its retained jurisdiction "to construe, interpret and enforce the Order Confirming the Trustees' Plan and the rights of these trustees under that Order." Order at 3. As authority for the Court's conclusion, Judge Britton relied upon *Commerce Trust Co. v. Aylward,* 145 F.2d 113 (8th Cir. 1944). The Eighth Circuit, in *Commerce Trust, supra* held that the Bankruptcy Court had jurisdiction to fix the amount of an indenture trustee's compensation as well as the fees of the attorneys. The appellate court reached this conclusion because of the terms of the agreement which the indenture trustee and the bankruptcy trustee had entered. This conclusion, therefore, dictates that this Court examine the precise terms of the Plan to see if the retained jurisdiction was exercised in a manner contemplated by the agreement.

Bollt and Millen argue that the Bankruptcy Court lacked jurisdiction because it was not enforcing, construing or interpreting the Plan nor was it addressing the rights of creditors, the structure or substance of the Plan. Additionally, Appellants argue that the Bankruptcy Court acted in contravention of case law which precludes such an exercise of jurisdiction. That authority holds essentially that a bankruptcy court cannot exercise jurisdiction over the day-to-day affairs of a post-reorganization entity even if the Final Decree purports to retain jurisdiction.[3]

Appellee, GAC Liquidating Trust, counters that the Bankruptcy Court did have the power to reopen the case because (1) of the express reservation of jurisdiction in the Final Decree and (2) under the former Bankruptcy Act, the controlling provisions in this matter, § 2a(8) permits the court to reopen bankruptcy estates for "good cause shown". Appellee relies on *In Re Int'l Match Corp.,* 190 F.2d 458 (2d Cir.), *cert, denied,* 342 U.S. 870, 72 S.Ct. 113, 96 L.Ed. 655 (1951) to support its proposition. In *In Re Int'l Match Corp, supra* the Second Circuit affirmed an order reopening a closed estate where there had been repeated violations and fraudulent concealment of excess commissions by the bankruptcy referee. Placing considerable emphasis on the fact that the bankruptcy ref-

---

**2.** The October, 1981 Final Decree stated: "this Court retains jurisdiction to (a) construe, interpret and enforce the Plan, and all orders and decrees at any time entered in these proceedings including, but not limited to, this Final Decree and the rights and claims of any person set forth in or derived under the Plan and/or such orders and decrees...."

**3.** Appellants rely on *Reese v. Beacon Hill,* 149 F.2d 610 (2d Cir.1945) ("We have repeatedly held that reservation of jurisdiction beyond what is requisite to effectuate a plan of reorganization is beyond the power of the reorganization court."); *In Re Flatbush Ave—Nevins St. Corp. v. Farthing,* 133 F.2d 760 (2d Cir.1943) ("Congress did not intend that the bankruptcy court should, after approval of a plan under Chapter X, ... have the power to remain a wet nurse to the reorganized company. The bankruptcy court cannot retain jurisdiction merely by inserting a provision reserving jurisdiction."); *In Re Atlas Sewing Centers, Inc.,* 384 F.2d 66 (5th Cir.1967) (citing in a footnote *North American Car v. Peerless Weighing & Vending Machine Corp.,* 143 F.2d 938 (2d Cir.1944) ("We have had the occasion before to deplore the tendency of District Courts to keep reorganized concerns in tutelage * * * by orders purporting to retain jurisdiction for a variety of purposes, extending from complete supervision of the new business to modification of detail in the reorganization.....")).

eree was a court appointed officer, the court stated:

> [a]ny person, whether creditor of the estate involved or not, had the right, if not the duty, to call to the court's attention the facts and the court thereafter proceeded to summarily and *sua sponte* to investigate and decide the matter and order the recovery of the sums involved.

190 F.2d at 461.[4]

While the Trustees' acts of hiring legal counsel and other professional services are admittedly "day-to-day" affairs in the operation of the trust itself, this Court rejects Appellants' assertion that issues concerning their fiduciary obligations as trustees (and, thus, any potential conflict of interest) can be characterized as arising in the ordinary course of business. To the contrary, an inquiry into a fiduciary's potential conflict of interest is an extraordinary occurrence, not a routine one. Thus, the facts *sub judice* differ from those articulated in the cases upon which Appellants rely. The Bankruptcy Court, therefore, was not precluded from reopening the case.[5]

■, Equally as important, this Court concludes that the dispute over the amount of compensation that the Trustees could receive, especially for non-trust services, is precisely the type of controversy that the reservation of jurisdiction clause was intended to address. Judge Britton was, indeed, performing the very task he was obligated to do—construe and interpret the Plan. This Court comes to the firm conclusion that the Bankruptcy Court's inquiry was well within its powers of retained jurisdiction. The Bankruptcy Judge was in no way attempting to alter or amend the Plan in effect; rather he was attempting to enforce and protect the very Plan which the Court has approved four years prior. *In*

*Re Atlas Sewing*, 384 F.2d 66 (5th Cir. 1967). As the Fifth Circuit stated:

> This is in no sense an amendment of the Plan. The Court has been called upon to act because the Plan, confirmed and approved and adopted by all, has simply not been satisfied and at the present time there is every indication that it cannot be met. Nor is it an effort by the *District Court to insert itself in the day-to-day managerial decisions of a going business. The Court is not attempting to exercise jurisdiction for the purpose of passing upon normal business activities of a rehabilitated corporation or upon matters not related to the Plan of Reorganization.*

*Id.* at 89. (emphasis added). Had the Bankruptcy Court not taken corrective actions, the integrity of the Plan may have been harmed. Moreover, the individual interests of the Trust beneficiaries may also have been injured. The Bankruptcy Judge is to be applauded—not condemned.

### Interpreting the Declaration of Trust

■ Section 11.1 of the trust instrument expressly provides that the trustees "shall each receive the sum of Twenty-Four Thousand and No/Dollars ($24,000.00) per annum as full compensation for their services. The compensation may be increased from time to time in the Trustees' discretion, but such increases are not to be greater than 7.5 percent annum on a cumulative basis." Judge Britton noted that the Trustees employed, at an expense over one million dollars, two large accounting firms and "one of the largest law firms in Florida" on a general retainer. Order at 8. Judge Britton interpreted the Trust Declaration as providing a fixed sum for the Trustees' full compensation. Consequently, he concluded that the "[t]rustees may not be paid for additional, extraordinary or special services." *Id.* Judge Britton em-

---

4. Appellants attempt to distinguish *In Re Int'l Match Corp.* factually by noting that the controversy in that case arose prior to the Final Decree being entered while here the controversy concerns the Trustees' actions after the Final Decree was entered. Appellants, however, miss the thrust of the court's ruling in *In Re Int'l Match Corp.*—the lower court's obligation to protect the estate and its creditors.

5. *See also In Re Colony Square Company,* 779 F.2d 653, 655 (11th Cir.1986)

phasized that the compensation provided for in the Trust Declaration unlike the compensation in *Commerce Trust Co., supra* at 115, is not subject to review by any third party. For that reason, Judge Britton concluded that it was particularly important that a fixed sum be specified. This Court finds Judge Britton's reasoning to be sound.

For example, section 7.2(8) addresses the powers which the Trustees may exercise *without* the consent of the Trust Certificate Holders. That section permits the Trustees to

> do and perform any acts ... including to employ a Manager and such agents and staff and to retain the services and or facilities of any *other* person, firm or corporation.... (emphasis added)

The term "other" indicates that the Trustees are excluded from the categories of persons which they have the *power* to employ without the consent of the Certificate Holders. The plain and simple language mandates no other logical interpretation. Reading sections 11.1 and 7.2(8) *in pari materia* and construing the instrument as a whole, this Court rejects Appellants' contention that they are free to employ themselves for non-trustee services without the consent of the Certificate Holders. Similarly, the Court rejects Appellants' contention that they may pay themselves fees beyond the amount specified in the Trust Declaration.

Bollt and Millen also argue that the trust instrument is ambiguous and, therefore, the Court is obligated to look to Florida law to determine whether it permits a trustee to retain and compensate himself for "extraordinary" services. Appellants rely heavily on *In Re Estate of Max Lieber,* 103 So.2d 192 (Fla.1958) to support their position. Appellants also place great reliance on the recent amendments to the Florida Probate Code which allow for trustees to hire themselves for non-trustee services.

In both instances, Appellant's reliance is misplaced.

In *Estate of Max Lieber, supra* the Florida Supreme Court had to determine the reasonable value of an attorney and co-executors' services. The court, in dictum, noted that

> ... one of the co-executors was one of the members of the firm of attorneys which was retained to represent the co-executors and the estate. There is nothing wrong with this. The statute recognizes that such a circumstance may occur for Sec. 734.01(4) F.S.A. provides that if a personal representative is a practicing attorney, and does render legal services in connection with his duties, he shall be allowed reasonable fees for the legal services which he renders. We construe this to mean that he shall receive compensation for the legal services he renders in addition to the compensation paid for executorial services.

103 So.2d at 201. Notwithstanding the Court's recognition of a fiduciary's ability to receive compensation for "extraordinary" services, this Court concludes that *Estate of Max Lieber* is inapposite to the facts *sub judice.*[6]

Having reviewed thoroughly the entire trust instrument, the Court finds it unambiguous. There is no need to look beyond the four corners of the instrument itself. *Knauer v. Barnett,* 360 So.2d 399 (Fla. 1978). Moreover, the Probate Code and the recent legislative amendments, at best, can only be used as persuasive evidence of a general policy in Florida towards more liberal fiduciary employment standards. However, that trend is not to be considered when dealing with *liquidating* trusts because they are explicitly excepted from the Probate Code.[7]

■ Lastly, the Court notes that the Bankruptcy Court relied on *Fulton National Bank v. Tate,* 363 F.2d 562 (5th Cir.1966) to support its conclusion that

---

**6.** The fiduciaries in *Estate of Max Lieber* were executors of an estate. Thus, they were governed by the provisions of the Probate Code. See *supra* note 7 and accompanying text.

**7.** See Fla.Stat. § 731.201(32)

Trustees Bollt and Millen had a conflict of interest between their personal financial gain and their fiduciary obligations to the trust beneficiaries. While acknowledging that the Fifth Circuit applied Georgia not Florida law in *Fulton National Bank,* Judge Britton nonetheless concluded that its premise was sound and that the framers of the Declaration of Trust intended to eliminate any conflict of interest by providing a fixed all-inclusive compensation for these Trustees. See *Fulton National Bank, supra* at 571 (" ... [T]he beneficiary need only show that the fiduciary allowed himself to be placed in a position where his interest *might* conflict with the interest of the beneficiary. It is unnecessary to show that the fiduciary succumbed to this temptation, that he acted in bad faith, that he gained an advantage, fair or unfair, that the beneficiary was harmed. Indeed, the law presumes that the fiduciary acted disloyally, and inquiry into such matters is forclosed.") (emphasis in original). This Court is in complete accord. Many years ago Benjamin Cardozo expressed a sentiment which has application to this case—

> Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctillo of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions. * * * Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd.

*Meinhard v. Salmon,* 164 N.E. 545, 249 N.Y. 458 (N.Y.1928). Trustees Bollt and Millen are bound to no less of an exacting standard. Their conduct has fallen below that which is required of trustees. This Court will not tolerate such improprieties and will not permit the beneficiaries' interests to be compromised for Mr. Bollt and Mr. Millen's personal gain.[8] In this respect, the Bankruptcy Court's Order is affirmed. Trustees Bollt and Millen are ordered to pay back to the trust within forty-five (45) days from the date of this Order all compensation received by them from the trust in excess of the sum authorized by § 11.1 of the Declaration of Trust. Additionally, Trustees Bollt and Millen are permanently removed from their positions as Trustees.

### The Due Process Claim

■ Bollt and Millen also argue that the Bankruptcy Court denied them due process when it declined to take the testimony of their expert witness. Appellants offered this witness to testify whether the questioned non-trustee services were outside the normal scope of their duties as trustees; whether the non-trustee services were reasonable and necessary to the administration of the trust; and whether the services were billed at a reasonable rate.[9]

A review of the record below demonstrates that Judge Britton believed that it would only be necessary to take testimony regarding these issues if he determined that Bollt and Millen could legally perform

---

8. Appellants also argue that they employed themselves to perform non-trustee services in the interest of saving the trust additional expenses. This contention is without merit. Bollt and Millen had already retained the services of an accounting firm as well as a law firm. It is ludicrous to presume that Appellants would still find it necessary to employ themselves for accounting and legal work. On this same theme of "economy", Appellants hired Bollt's son as a professional manager at the rate of $175–225 an hour when it was not clear that Mr. Bollt's son was an experienced, qualified "professional" manager.

9. Appellants additionally complain that the Bankruptcy Court's failure to allow this proffered "fact" testimony resulted in a Court Order which was based upon facts "not in evidence". Appellants admit, however, that the Bankruptcy Court had schedules and affidavits which had been submitted by the Trustees.

such services for the Trust. Judge Britton reasoned that because Appellants were precluded from employing themselves to perform such services, this ruling obviated the need for testimony concerning the reasonableness of the compensation received.[10] His reasoning is eminently correct and affirmed.

### Removal and Surcharge

Lastly, Bollt and Millen contend that the Bankruptcy Court erred when it removed them as Trustees of GAC Liquidating Trust and required them to pay back to the Trust all sums beyond that specifically provided for in Section 11.1. The Bankruptcy Court did so because it concluded that anything less would "fall[ ] short of the prophylactic purpose" of the rule which prevents a fiduciary from placing himself in a position where his personal interest might conflict with that of the beneficiary's. This Court is in complete accord. Had the Bankruptcy Court done less, it would have undermined the principles which give rise to a fiduciary's sacred duty to the beneficiary.

Based upon the foregoing discussion, it is

ORDERED and ADJUDGED that the Bankruptcy Court is AFFIRMED.[11]

---

**10.** Similarly, Judge Britton's interpretation of the Declaration of Trust provided the necessary scope of the Trustees' duties.

**11.** Throughout this appeal the Court has been mindful of the appropriate standard of review.

Findings of fact shall not be set aside unless clearly erroneous. Bankr.R. 8013. Questions of law are freely reviewable. *Matter of Multiponics, Inc.,* 622 F.2d 709, 713 (5th Cir.1980).